# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| HYDIA ELIZABETH CONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI, | ) | Case No. CIV-20-690-SM |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Hydia Elizabeth Cone (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A), 1382c(a)(3)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). *See* Docs. 20, 22.

Plaintiff asks this Court to reverse the Commissioner's decision and to remand the case for further proceedings because the Administrative Law Judge (ALJ) erred at step two by failing to consider certain impairments as severe, the ALJ improperly formulated the residual functional capacity[1] (RFC), and because the Appeals Council disregarded newly submitted evidence. Doc.

---

[1]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545 (a)(1), 416.945(a)(1).

27, at 3-12. After a careful review of the record (AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[2]

## I.   Administrative determination.

### A.   Disability standard.

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.   Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff

---

[2]   Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C.   Relevant findings.

#### 1.   Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 36-46; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found that Plaintiff:

(1)   had not engaged in substantial gainful activity since April 1, 2018, the alleged onset date;

(2)   had the following severe medically determinable impairments: degenerative disc disease (including prominent lower thoracic spine and upper lumbar spine degenerative disc disease, significant mid-and-lower lumbar spine degrative disc disease, and grade 2 listhesis at L5-S1), asthma, and lower foot pes planovalgus foot deformity with subtalar and calcaneocuboid arthrosis with osteoarthrosis of the left foot;

(3)   had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)   had the RFC to perform light work with the following limitations: (a) occasionally stoop and climb ramps, stairs, ladders, ropes, and scaffolds; (b) frequently balance; and (c) avoid concentrated exposures to fumes, odors, dusts, gases, and poor ventilation;

(5)    was able to perform her past relevant work as a Cashier II and an Assistant Manager as actually and generally performed; and so,

(6)    had not been under a disability from April 1, 2018, through the date of the decision.

*See* AR 38-46.

### 2.    Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II.    Judicial review of the Commissioner's final decision.

### A.    Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on

substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

### B.    Issues for judicial review.

Plaintiff contends the ALJ failed to address the severity of some of her impairments at step two of the sequential analysis. Doc. 27, at 6-9. Plaintiff also argues that the ALJ failed to account for all of her limitations in the RFC. *Id.* at 9-12. Finally, Plaintiff asserts the Appeals Council rebuffed evidence she submitted after the ALJ's decision. *Id.* at 3-6.

## III.   Analysis of the ALJ's decision.

### A.    Any step two error was harmless.

Plaintiff contends the ALJ erred by not considering some impairments to be severe and by not considering others at all. She asserts the record contains evidence of impairments that the ALJ failed to discuss, including: ankylosis of both feet, bilateral pes planovalgus deformities,[3] peripheral venous insufficiency of both legs, peripheral neuropathy, peripheral edema, chronic fatigue, and hypertension. Doc. 27, at 6-7. Plaintiff also appears to

---

[3]    The ALJ determined left foot pes planovalgus foot deformity was a severe impairment. AR 39.

argue that obesity, chronic idiopathic constipation, hip impingement, right shoulder rotator repair, osteoarthritis of both hands, osteoarthritis of both feet, and left carpal tunnel with osteopenic changes and mild joint space narrowing—all impairments the ALJ considered to be not severe—should have been considered as severe impairments. *Id.*

Plaintiff contends "[t]he ALJ's determination at step two of the sequential evaluation process failed because he did not properly consider the entire record and all of [her] impairments." *Id.* at 6. Yet the ALJ found multiple severe impairments and continued in the sequential analysis. AR 39. Thus, any error in failing to find other impairments severe is harmless. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error [at step two] became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

**B.    The ALJ did not err in formulating the RFC.**

**1.    The ALJ was not required to discuss all of Plaintiff's diagnoses.**

Plaintiff asserts "[m]any of the conditions the ALJ did not address, *see supra* § III.A, "have a direct impact [on her] ability to stand and/or walk for a prolonged and extended period of time in a workday, and especially in a workweek." Doc. 27, at 7; *see also id.* at 8 (arguing the conditions affect

Plaintiff's ability to "remain on her feet for a full workweek" and impact her "regular attendance"). By not discussing the diagnoses, Plaintiff claims the ALJ engaged in improper picking and choosing. *Id.* at 7. But "[d]iagnosis of a condition does not automatically mean that the claimant is disabled; what matters is whether the condition results in work-related limitations." *Paulsen v. Colvin*, 665 F. App'x 660, 668 (10th Cir. 2016) (citing *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988)). The ALJ need only consider the resultant functional limitations arising from the conditions, if any, to formulate Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Thus, the ALJ's failure to specifically address certain impairments in his discussion of the RFC is not, by itself, error.

The Court's analysis does not end there because Plaintiff contends her impairments result in functional limitations not contained in the RFC. In support, she cites the consultative examiner's report, which indicates Plaintiff has a limited range of motion and weakness in her right knee and ankle, weak toe walking, an inability to completely straighten her foot, ambulation with a limp, weakened strength in her left leg and toe and a likely hip impingement. Doc. 27, at 11-12 (citing AR 754-61). She contends these limitations should have been included in the RFC. *Id.* at 12. While "an ALJ is not required to discuss every piece of evidence," he must "discuss the uncontroverted evidence

he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3) ("We will consider all evidence in your case record. . . .").

Here, the ALJ addressed most of these issues in his thorough discussion of the consultative examination report by Dr. Julie Mahaney, M.D. AR 45 (noting "abnormal range of motions," "ambulat[ion] w/ left limp," 4/5 muscle strength in her left leg, 4/5 toe strength in her left foot, and "likely hip impingement"). The ALJ also incorporated the state agency physicians' written statements into the decision, which each noted Plaintiff's report to Dr. Mahaney that she could not straighten her foot completely. *Id.* at 44, 103, 119. While the ALJ did not specifically address an objective finding of weak toe walking, *id.* at 757, the Court finds such evidence was not uncontroverted as the narrative portion of Dr. Mahaney's report reflected "heel to toe walking was normal" in the right leg, but that she was "unable to accurately assess heel to toe" in the left leg because of her ankle brace. *Id.* at 760. The notation regarding toe walking was also not all that probative considering the other evidence in the decision related to Plaintiff's ability to walk and the strength

in her legs.[4] *See id.* at 42-45 (multiple references to Plaintiff's testimony that she is on her feet working six straight hours (with standard work breaks) for three straight days per week without the use of a cane, crutch, scooter, or wheelchair); *id.* at 43-45 (noting Plaintiff receives conservative treatment); *id.* at 43 (noting Plaintiff could lead with her injured foot climbing onto an exam table); *id.* (referencing a medical report notation that Plaintiff can do most of her normal activities).

### 2.    The ALJ did not err in discussing Plaintiff's obesity.

Plaintiff contends the ALJ did not properly evaluate her "obesity in accordance with SSR 19-2p at either steps two or anywhere in the opinion, since [the ALJ] found her obesity to be non-severe." Doc. 27, at 9. Specifically, she contends the ALJ erred at steps four and five because the ALJ did not "make clear just how the severe impairment of obesity influences the RFC's

---

[4]    Plaintiff also contends the supplemental records contained evidence related to her venous insufficiency. Doc. 27, at 10-11. These records were not before the ALJ, so he could not have erred by failing to address them. Plaintiff also asserts some of her issues began "well before the supplemented records." *Id.* at 11. Plaintiff, however, cites no portion of the record in front of the ALJ supporting this proposition, and the Court need not search the record on her behalf. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of her contentions that have been adequately briefed for our review."); *Effinger v. Callahan*, 1997 WL 446724, at *2 (10th Cir. Aug. 6, 1997) (citing *SEC v. Thomas,* 965 F.2d 825, 827 (10th Cir.1992)) (holding that the Court "will not comb through the record where [Plaintiff] has not provided specific references tied to an argument").

restrictions." *Id.* She argues that because her BMI is in the 40s, obesity "would have a dramatic impact upon [her] degenerative disc disease of the thoracic and lumbar spine, asthma and left foot pes planovalgus foot deformity with subtalar and calcaneocuboid arthrosis with osteoarthritis of the left foot." *Id.*

An ALJ "must consider the limiting effects of obesity when assessing a person's RFC" and "explain how [he] reached [his] conclusion on whether obesity causes any limitations." SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). But "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairments." *Id.* at *2. An ALJ does "not make general assumptions about the severity of functional effects of obesity combined with another impairment(s)," but instead "evaluate[s] each case based on the information in the case record." *Id.* at *4.

In her argument, Plaintiff cites no evidence supporting the presence of additional limitations caused by obesity. Instead, she merely speculates that her conditions "would be greatly impacted or aggravated by [her] obesity" and that her BMI "would have a dramatic impact upon" her conditions. Doc. 27, at 8-9. In the decision, the ALJ considered obesity to be a non-severe impairment. AR 39. He found obesity and other impairments "considered individually and in combination, [were] non-severe because they cause no more than a minimal limitation in [Plaintiff's] ability to perform basic work activities." *Id.* at 40. In

10

summarizing the medical evidence, the ALJ noted Plaintiff's height and weight at her consultative examination as well as various findings—both positive and negative—from the consultative examination report. *Id.* at 45. After considering such evidence, the ALJ formulated the RFC which included a limitation to light work along with climbing restrictions. *Id.* at 40.

Based on the ALJ's consideration of obesity and Plaintiff's failure to address any evidence of limitations as a result of obesity, the ALJ did not err in his consideration of the issue. *See Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (affirming where the appellant "point[ed] to no medical evidence indicating that her obesity resulted in functional limitations"); *Archie D. F. v. Saul*, 2021 WL 1348264, at *9 (N.D. Okla. Apr. 12, 2021) (finding no error in considering obesity where "the ALJ considered 'the entire record,' including Plaintiff's obesity," stated the determination was "[b]ased upon 'a complete and thorough review of the evidence in the file,'" and the ALJ found a doctor's report persuasive "which noted Plaintiff's obesity and instances of elevated BMI in determining Plaintiff's functional abilities"). And although Plaintiff argues "[a]n ALJ must make clear just how the severe impairment of obesity influences the RFC," Doc. 27, at 9, an ALJ is not "required to note the absence of any evidence that [a claimant's] obesity resulted in additional functional limitations or exacerbated any other impairment." *Smith v. Colvin*, 625 F.

App'x 896, 899 (10th Cir. 2015). Thus, the Court finds the ALJ properly considered Plaintiff's obesity.

### C. The Appeals Council did not err in refusing to consider newly submitted records.

Plaintiff submitted medical records to the Appeals Council after the ALJ issued the decision. AR 2. The Appeals Council received the additional evidence and, relevant to Plaintiff's claims,[5] found:

> You submitted medical evidence from Foot and Ankle Center of Oklahoma dated August 23, 2019 through October 24, 2019 (12 pages), Open Sided MRI of Oklahoma City dated August 2, 2017 (2 pages), and medical evidence from Gilbert Medical Center dated July 10, 2019 through October 29, 2019 (8 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

*Id.* Thus, the Appeals Council did not consider the additional evidence when it denied review. *See Martinez v. Saul*, 2020 WL 4597024, at *5 (D.N.M. Aug. 11, 2020) ("When the Appeals Council stated it did not 'exhibit' the evidence, it also necessarily conveyed that it did not 'consider' the evidence."). Plaintiff contends the Appeals Council should have considered the additional information.

---

[5]    The Appeals Council did not exhibit other records because they were copies of exhibits already in the record, and thus "not new." AR 2. Plaintiff does not challenge the Appeals Council's failure to exhibit the evidence it found to be not new.

### 1. Applicable law regarding the consideration of new records at the Appeals Council level.

Under SSA regulations, the Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).[6] Evidence is new "if it is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (citation omitted). The Tenth Circuit, relying on an older version of the regulation which did not include "reasonable probability" language,[7] held evidence is material "if there is a reasonable possibility that it would have changed the outcome." *Id.* (quotation and alteration omitted). Even so, based on the regulation's new language, courts have applied a heightened materiality standard. *See Hanna v. Kijakazi*, 2021 WL 3169203, at *5 (D.N.M. July 27, 2021) ("[T]he prevailing view in this District is that '[t]his requirement heightens the claimant's burden to prove materiality: whereas the previous test required merely a reasonable *possibility* of changing the outcome, now it

---

[6]   The claimant must also show good cause for not submitting the evidence to the ALJ. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b).

[7]   Before January 17, 2017, 20 C.F.R. §§ 404.970 and 416.1470 required the Appeals Council to consider additional evidence if it was "new and material," but did not include the "reasonable probability" language.

requires a reasonable *probability* of changing the outcome.'" (quoting *Bisbee v. Berryhill*, 2019 WL 1129459, at *3 n.5 (D.N.M. Mar. 12, 2019)).

Unlike the substantial-evidence review a court undertakes in reviewing an ALJ's decision,[8] "[w]hether evidence qualifies for consideration is a question of law subject to de novo review." *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013) (citing *Threet*, 353 F.3d at 1191); *Martinez*, 2020 WL 4597024, at *5 ("To reiterate: when never-before-considered evidence is presented to the Appeals Council, the substantial-evidence review standard applies *only* if the Appeals Council 'considered' the additional evidence as qualifying for review under subsection (a)(5)'s three criteria."). "If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). "If the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings." *Id.*

---

[8]     Relying on *Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017), the Commissioner asserts the Court must conduct a substantial-evidence review by assessing the entire agency record. Doc. 28, at 14. But *Vallejo* differs from this case—there, the Appeals Council considered the additional evidence and denied review, 849 F.3d at 953, but here the Appeals Council did not consider the additional evidence. "[N]ew evidence submitted to the Appeals Council is no longer automatically included in the substantial evidence analysis." *Sewell v. Commissioner, SSA*, 2021 WL 3871888, at *5 (10th Cir. Aug. 31, 2021).

### 2. The Appeals Council did not err in rejecting the newly submitted evidence.

#### a. Summary of the newly submitted evidence.

An August 2, 2017 MRI of Plaintiff's lumbar spine showed "[g]rade 1 anterolisthesis of L5 on S1 from probable pars defects at L5 with diffuse disc bulge, results in moderate to severe bilateral neural foraminal narrowing without spinal canal stenosis" and "L4-5 disc bulge combined with facet arthropathy results in mild to moderate right and mild left neural foraminal narrowing with mild spinal canal stenosis." AR 54.

Records from the Gilbert Medical Center indicate Plaintiff presented for a visit on August 21, 2019, after she fell getting into her car, aggravated her lower back, and rolled her left ankle and right foot. *Id.* at 16. Her main pain, however, was in her swollen left ankle. *Id.* Dr. Stuart Lisle, M.D., assessed Plaintiff with a left ankle sprain, right foot pain, acute pain of the right knee, and acute right-sided low back pain with right-sided sciatica. *Id.* at 17. He gave Plaintiff a handout for home exercises, advised Plaintiff to "go back to wearing her brace," and would "see her back in if she is not getting better." *Id.*

Two days later, Plaintiff presented to the Foot and Ankle Center of Oklahoma, reporting mild-to-moderate soreness in her right great toe and metatarsal related to her fall. *Id.* at 21. Dr. Darren Elenburg, DPM, noted Plaintiff's right big toe had "moderate pain with ROM and palpation" and

"mild, moderate pain on palpation on the right foot." *Id.* at 23. The report also notes "severe hyper/pathologic-pronation present bilateral feet causing significant pain, which is dependent on activities and moderately limits activities." *Id.* In Dr. Elenburg's cardiovascular findings, he noted Plaintiff had 2+ edema of both legs, left and right dorsalis pedis pulses were 2+ brisk-normal and tibial pulses were 0. *Id.* Dr. Elenburg diagnosed Plaintiff with pain in right ankle and joints of right foot, metatarsalgia, primary osteoarthritis of the right ankle and foot, ankylosis of the right food, and sprain of the metatarsophalangeal joint of the right great toe. *Id.* He also placed Plaintiff in a pneumatic walking boot (identified in the record as a "cam walker") to allow Plaintiff's foot and ankle to feel better and heal. *Id.* at 23-24.

Plaintiff followed up with Dr. Elenburg on September 12, 2019. *Id.* at 25-27. Plaintiff reported no pain and advised she was much better than her last visit. *Id.* at 25. Dr. Elenburg continued his recommendation that Plaintiff use a walking boot. *Id.* at 27.

On October 2, 2019, Plaintiff presented to Gilbert Medical Center for a sinus infection. During her appointment, she fell backward trying to get on the exam table, hitting her head and shoulder on the cabinet. *Id.* at 14. Dr. Lisle "reassured [Plaintiff] about the fall" and reported "it sounds like it is just mostly soft tissue." *Id.* at 15. The records did not discuss Plaintiff's foot or note

her use of a walking boot, but did state she walked out of the clinic on her own power. *Id.* at 14-15.

The last relevant record is a follow-up with Dr. Elenburg on October 24, 2019.[9] *Id.* at 28-31. The report reflects Plaintiff continued to report no pain related to her right toe injury. *Id.* at 28. She did report, however, a general "pain in feet" at the plantar of bilateral feet and toes with a strong achy feeling in the bottom of the feet with needles in the toes which had occurred for a few days. *Id.* at 28-29. Plaintiff reported that supportive shoes help, but she usually "has to just let it pass." *Id.* at 29. Dr. Elenburg continued recommending the use of a walking boot. *Id.* at 31.

> **b.    There is not a reasonable probability that the additional evidence would change the outcome of the ALJ's decision.**

Plaintiff contends the evidence would change the outcome because it supports a more limited RFC than found by the ALJ. Doc. 27, at 5. She argues the evidence shows she "cannot maintain working on her feet on a full-time basis." *Id.* She also asserts "[c]onsistent edema and absent pulses in [her] legs, as well as pain-producing defects in [her] feet are sufficient to limit [her] to

---

[9]    A July 10, 2019 record from Gilbert Medical Center is related to draining an abscess on Plaintiff's forehead and an October 29, 2019 record from the same provider reports only that Plaintiff received a flu shot. AR 13, 19-20.

sedentary work." *Id.* She contends this is case-determinative because a limitation to sedentary work would result in being considered disabled under the Medical-Vocational Guidelines (grids). *Id.* (citing 20 C.F.R. Part 404, Subpt. P, App. 2 § 201.02).

There is not a reasonable probability that Plaintiff's records related to her first fall would have changed the ALJ's decision. The records reflect that the fall caused a left ankle sprain and pain in her lower back, right knee, and right foot. AR 16-17, 21-24. While Dr. Elenburg placed Plaintiff in a pneumatic walking boot, the use of such a device does not necessarily result in any functional limitations. *See Karen Jean M. v. Saul*, 2020 WL 5057488, at *7 (D. Kan. Aug. 27, 2020) ("Plaintiff has not shown in what way intermittent use of a medical walking boot, or any boot, would impose limitations greater than those assessed by the ALJ or would preclude performance of the representative jobs relied upon."). And the Court notes that three weeks after her first appointment, Plaintiff reported no pain and advised she was much better. AR 25. Thus, the Court finds that any potential limitations related to her fall were temporary,[10] and thus would not have changed the ALJ's decision. *See, e.g.*,

---

[10]    The Court notes that Dr. Elenburg found "severe hyper/pathologic-pronation present on bilateral feet causing significant pain, which is dependent on activities and moderately limits activities." AR 23, 27, 30. But this finding is not new. In a January 8, 2018 record cited by the ALJ in the decision, Dr. Elenburg found that Plaintiff had "severe hyper/pathologic-pronation present

*Clapper v. Berryhill*, No. CIV-17-1070-STE, 2018 WL 2144610, at *6-7 (W.D. Okla. May 9, 2018) (affirming and finding the ALJ's reasoning "valid" where the ALJ discounted an opinion because the limitations were temporary); *Roybal-Sandoval v. Colvin*, 2015 WL 5159070, at *5 (D. Colo. Sept. 3, 2015) ("Although the doctor instructed Plaintiff not to lift anything heavier than a glass of water, Plaintiff has not cited any medical records demonstrating that this limitation was anything more than a temporary restriction while she healed.").

Plaintiff's October 2, 2019 fall at Gilbert Medical Center did not appear to cause any functional limitations, as she was able to walk out of the office on her own power and Dr. Lisle reported any injury is mostly to soft tissue. AR 15. The Court recognizes that the ALJ found the state agency physicians' opinions persuasive in part because they "are consistent with [Plaintiff's]

---

on bilateral feet causing significant pain, which is dependent on activities and significantly limits activities." *Id.* at 739; *see also id.* at 731, 735, 743 (same); *id.* at 747 (indicating condition moderately limits activities). "Because the ALJ considered almost identical records when making his determination . . . there is no reasonable probability the new evidence would change the outcome of the decision." *Dara L. v. Saul*, 2021 WL 1169653, at *5 (D. Utah Mar. 26, 2021).

Similarly, while Plaintiff notes that the new records contain cardiovascular findings showing 2+ edema and absent posterior tibial pulses, Dr. Lisle's previous records reflect the same. AR 743, 747. Thus, there is no reasonable probability the cardiovascular findings would change the outcome of the decision. *See Dara L.*, 2021 WL 1169653, at *5.

consultative examination, where she showed the ability to climb onto the examination table without any difficulty, step up to the examination bed [the examination table] leading with her injured left foot, and get up from the sitting position without any difficulty." AR 44. While Plaintiff's fall at Gilbert Medical Center is not consistent with the ALJ's prior finding, the ALJ relied on other evidence in finding the opinions persuasive, such as her ability to stand at work for six hours per day with breaks, three days per week (with breaks), and without the use of an assistive device except for a foot/leg brace. *Id.*

Thus, the Court finds that the evidence would not have changed the decision. *See Bainbridge v. Colvin*, 618 F. App'x 384, 390 (10th Cir. 2015) ("But even if this reason was improper, the other reasons the ALJ gave were more than sufficient for rejecting [the physician's] opinion.").

Plaintiff did not address the August 2, 2017 MRI results in her brief. But, even if she had, the argument would not have been successful. Citing more recent records, the ALJ addressed Plaintiff's "history of degenerative disc disease of the lumbar spine" and addressed a July 2018 x-ray showing "significant mid and lower lumbar spine degenerative disc disease." AR 43 (citing *id.* at 417, 680, 758). And the MRI results do not contain any information suggesting functional limitations. Considering that the ALJ

considered relevant and similar objective findings regarding Plaintiff's lumbar spine in formulating the RFC, the Court finds the Appeals Council did not err when it found there was not a reasonable probability that newly submitted MRI would have changed the ALJ's decision.

For the reasons stated above, the Appeals Council did not err by not considering newly submitted evidence because there was not a reasonable probability that it would have changed the ALJ's decision.

## IV.    Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 17th day of September, 2021.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE